## A. T. Short, Plaintiff in Error, v. Estate of Andrew J. Jacobus, Deceased, Defendant in Error.

1. LIMITATION OF ACTIONS, § 46*—*what is not fraudulent concealment of action.* The mere silence of a person liable is not a fraudulent concealment of a cause of action within sec. 22, ch. 83, Rev. St. (J. & A. ¶ 7217), providing that if "a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards," and there must be some trick or contrivance or affirmative act intended to exclude suspicion and prevent inquiry.

2. LIMITATION OF ACTIONS, § 46*—*what is not fraudulent concealment of cause of action.* There is no fraudulent concealment of a cause of action for damages for setting fire to a person's own barn for the purpose of communicating to the barn of another and destroying it because of the presence of a stallion therein, where the guilty person had threatened to destroy the barn in which the stallion was, and after the fire, when examined by a detective, sim-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ply denied his guilt, although the stepson of such person, after the death of the latter, disclosed the fact that deceased had told him that he had burned the barn and had asked him to say nothing about it.

Error to the Circuit Court of Fulton county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed July 15, 1918.

W. S. JEWELL, CAMERON & CAMERON and ALPHON L. ANDERSON, for plaintiff in error.

CHIPERFIELD & CHIPERFIELD, for defendant in error.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Andrew J. Jacobus in his lifetime resided in the City of Farmington, Fulton county, Illinois, and died testate March 8, 1914. On the lot on which he resided was a barn. On the lot immediately adjoining was another barn owned by plaintiff in error. In the latter barn the Farmington Horse Company, a partnership, consisting of A. T. Short (plaintiff in error), David Nappin, J. B. Weaver, L. A. Thompson and J. S. Abbit, kept a Shire stallion valued at $1,800. Jacobus became very much incensed on account of the keeping of this horse on the premises adjoining his residence and petitioned the City Council of Farmington to prohibit the same as a nuisance. The City Council, however, refused to act in the matter and there is evidence that Jacobus threatened to burn the barn in order to get rid of the horse. Between 8 and 9 o'clock on the evening of August 15, 1904, the barn on the lot owned by Jacobus caught fire which was communicated to the barn owned by plaintiff in error and destroyed the same together with the stallion therein. Shortly after the fire, plaintiff in error and the Farmington Horse Company employed the Pinkerton Detective Agency to investigate the cause of the fire. A detective was sent to Farmington and had a conference with plaintiff in error, Abbit and Weaver and their attorney, who told

him that they suspected Jacobus of having set the barn on fire. The detective spent 7 or 8 days in investigating the matter and examined some 75 or 80 persons and was fully informed of the petition which Jacobus had sent to the City Council and of his subsequent threats· to burn the barn. He interviewed Jacobus himself. He told Jacobus he was a detective working for the Pinkerton Detective Agency and was in Farmington to investigate the cause of the fire and asked Jacobus to come over to his room, as he wanted to talk to him about the fire. Jacobus went to the detective's room and there were present plaintiff in error and several of the partners of the Farmington Horse Company. This interview lasted about 20 minutes and the detective told Jacobus that all the circumstances pointed to him as being the one who set the barn on fire and asked him to make a confession. Jacobus said: "I didn't do it. I am sorry that people suspect me." The detective made a report to the Detective Agency of all the facts coming to his knowledge through his investigation and the latter sent a copy of his report to the plaintiff in error and to the Farmington Horse Company. The detective testified that he became satisfied that Jacobus was guilty of burning the barn; that the concensus of opinion of the residents of Farmington was to that effect, and that he so advised plaintiff in error and the Farmington Horse Company.

No action was brought against Jacobus either civil or criminal during his lifetime, but nearly 10 years later, on July 15, 1914, plaintiff in error filed his claim against the estate of Jacobus for the value of the barn and interest thereon from the date of the fire, making a total of $748.96. The claim was heard in the County Court and disallowed and an appeal was taken to the Circuit Court where it was heard before the court without a jury and again disallowed. To reverse the

judgment of the Circuit Court, this appeal is prosecuted.

It is apparent that the claim is barred by the statute of limitations unless it is saved by virtue of section 22, ch. 83, Rev. St. (J. & A. ¶ 7217), which is as follows: "If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

It is claimed that the following facts appearing in the evidence show that Jacobus fraudulently concealed the cause of action, viz.: (1) Jacobus denied that he caused the barn to burn; (2) the witness Taber, a stepson of Jacobus, testified that the latter told him that he had burned the barn and asked him to say nothing about it and that Taber did not disclose these facts to plaintiff in error until after the death of Jacobus.

It is undisputed that, within a few days after the fire, plaintiff in error had knowledge of all the facts which tended to support the theory that Jacobus had burned the barn, except an actual confession by Jacobus himself. There is no conflict in the authorities upon the rule of law that the mere silence of a person liable is not a fraudulent concealment of a cause of action within the meaning of the statute. *Keithley v. Mutual Life Ins. Co.,* 271 Ill. 584; *Lancaster v. Springer,* 239 Ill. 472; *Fortune v. English,* 226 Ill. 262; *Wood v. Williams,* 142 Ill. 269. There must be some trick or contrivance or affirmative act intended to exclude suspicion and prevent inquiry. *Keithley v. Mutual Life Ins. Co., supra.* The statute of Indiana is substantially the same as section 22 of our Statute of Limitations. *Keithley v. Mutual Life Ins. Co., supra.* In the case of *Jackson v. Buchanan,* 59 Ind. 390, it was held: "The concealment of the fact that

a person is liable to an action, to prevent the running of the statute of limitations, * * * must be of a positive and affirmative character, calculated to prevent the discovery of the liability, as by hiding the fact, or avoiding inquiry concerning its existence. * * * To deny a fact, or procure another to deny it, is not a positive or an affirmative act; it is a negation. That the guilty parties should deny the act averred in the complaint is not calculated to conceal the fact, but rather to awaken the attention of the aggrieved party to its existence, and put him upon inquiry as to its truth; nor does it tend to avoid inquiry concerning it, but rather to invite it.''

It was held in *Proctor v. Wells Bros. Co. of New York,* 181 Ill. App. 468: ''Concealment of identity of a party liable cannot be deemed the same as concealment of the cause of action.''

The facts in this case do not constitute in law the fraudulent concealment of a cause of action contemplated by the statute, and the judgment of the Circuit Court is affirmed.

*Affirmed.*

Mr. Justice Waggoner took no part in the decision of this case.